IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN MICHAEL JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 05-4166-JLF |
| ) | |
| THE AMERICAN COAL COMPANY, ) | |
| ) | |
| Defendant. ) | |

### ORDER

Before the Court is plaintiff's motion to remand (Docs.9,18). Defendant has filed a response, (Doc.19), and plaintiff has filed a reply (Doc.20).

**I.  Background.**

Plaintiff claims that he was discharged for exercising his rights under the Illinois Workers Compensation statute. Accordingly, plaintiff has filed a two-count complaint against his former employer for retaliatory discharge.

Plaintiff originally filed suit in Saline County, Illinois. Defendant has removed this action based upon diversity of citizenship. Specifically, defendant, incorporated in Delaware, claims that its principal place of business is in Ohio. Plaintiff argues that the principal place of business is at defendant's mining operations which are in Illinois. Plaintiff's motion for remand is discussed below.

**II.  Discussion.**

Under 28 U.S.C. § 1332(c), a corporation is deemed to be a citizen of any state where it is incorporated and where it has its principal place of business. *28 U.S.C. § 1332(c).*

The United States Court of Appeals for the Seventh Circuit has "explicitly adopted the nerve center test" to determine where a corporation has its principal place of business for purposes of jurisdiction based on diversity of citizenship. *Chamberlain Mfg. Corp. v. Maremont Corp.*, 828 F.Supp. 589, 591 (N.D.Ill.1993). "[O]nly the factors which deal with the brains of the organization should be considered for the 'nerve center' test and factors dealing with 'day-to-day operating responsibilities' . . . should be disregarded." *Chamberlain Mfg. Corp.*, 828 F.Supp. at 592. "The nerve center test considers the following factors: the place where corporate decisions are made, where the corporation is funded, where its general counsel, directors, officers and shareholders are located, where the primary bank account exists, and the place of its principle office and corporate headquarters." *Chamberlain Mfg. Corp.*, 828 F.Supp. at 591 (*citing Ratner v. Hecht*, 621 F.Supp. 378, 380 (N.D.Ill.1985)). The Seventh Circuit has noted that "[j]urisdiction ought to be readily determinable." *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986).

Defendant has submitted affidavit and deposition testimony sufficient to establish that defendant's "nerve center" is located in Ohio. (Doc. 1, p.7; Doc. 19, Exh. A). Specifically, of the above factors, defendant has established that the place of corporate decisions, and the location of most of its officers and shareholders, as well as the location of its principle office and corporate headquarters, is in the State of Ohio. Plaintiff, however, argues that defendant's actual operations are at various coal mines throughout Southern Illinois, and that it employs 900 Illinois residents. Plaintiff further argues that defendant has no offices outside the state of Illinois and that all of defendant's employees are in Illinois. Specifically, plaintiff argues that neither the president, nor the treasurer, secretary, or general counsel are

employed by defendant, and that defendant pays all of its taxes in Illinois. Finally, plaintiff argues that courts look to the "nerve center" to determine the principal place of business "only if no place in which the corporation conducts operations or activities is principal." (Doc. 9, p. 3). For support, plaintiff cites *Gilardi v. Atchison, Topeka and Santa Fe Railway Co.,* 189 F.Supp. 82 (D.C.Ill. 1960); *Peak Mechanical Oklahoma #5, Inc. v. Collins*, 237 F.Supp.2d 1287 (N.D.Okla. 2002); *Mattson v. Cuyuna Ore Co.*, 180 F.Supp. 743 (D.C.Minn. 1960); and *Homestead Log Co. v. Square D Co.*, 555 F.Supp. 1056 (D.C. Idaho 1983).

Contrary to plaintiff's cited authority, however, the United States Court of Appeals for the Seventh Circuit has "explicitly adopted the nerve center test" to determine where a corporation has its principal place of business for purposes of jurisdiction based on diversity of citizenship. *Chamberlain Mfg. Corp.,* 828 F.Supp. at 591. Furthermore, in support of its notice of removal, defendant has submitted an affidavit from Mr. Michael McKown, defendant's vice-president, general counsel, and corporate secretary, which states that although he lives in Missouri, defendant's president, (Mr. Murray), and defendant's treasurer, both live and work in Ohio. According to McKown, all of the significant corporate decisions that are made for the defendant are made in the State of Ohio (Doc. 1, pp.7-8). Mr. McKown's affidavit further states that the Board of Directors meetings are held in Ohio, the corporate accounting is performed in Ohio, and defendant's bank accounts are maintained in Ohio (Doc. 1, p.8). Mr. McKown has confirmed these statements at his deposition, (Doc. 19, Exh. B), and plaintiff does not dispute these assertions.

With regard to plaintiff's assertion that none of defendant's corporate executives are

employed by defendant, Mr. McKown explained at his deposition that defendant is a subsidiary of AMCoal Holdings Company, which is a subsidiary of Murray Energy Corporation (Doc. 19, Exh. B, pp.6-7). All of the stock of Murray Energy Corporation is owned by defendant's president and his family (Doc. 19, Exh. B, p.7). McKown further explained that the administrative functions for defendant are purchased from an affiliated company (Doc. 19, Exh. B, pp.6-7). As such, many of defendant's officers and managers are technically "employed by," (i.e., receive their paychecks from), another corporate affiliate, (Doc. 19, Exh. B, p.9), however, the important decisions regarding defendant's primary functions are made by officers who live and work in Ohio, primarily, the president, Mr. Murray, and the vice-president of operations, Mr. Forrelli (Doc. 19, Exh. B, pp.14-15,25). For example, defendant's president approves defendant's mining plan, and determines whether coal will be purchased, and if so, he determines what coal to buy and at what price. (Doc. 19, Exh. B, pp.26-27). Equipment purchasing decisions, as well as defendant's accounting functions, occur in Ohio (Doc. 19, Exh. B, pp.28-29). Finally, defendant's auditors are also located in Ohio (Doc. 19, Exh. B, p.29).

It is clear from the record that although defendant's president and other executives are not technically employed by defendant, they are employed by a corporate affiliate and, in any event, make the significant, corporate decisions for defendant. Although Mr. McKown, defendant's general counsel and corporate secretary, lives in Missouri, he has testified that defendant's president, corporate treasurer, and vice-president of operations live and work in Ohio, and that Ohio is where defendant's "brains" are located. In any event, this does not appear to be a case where the corporate headquarters may be divided between states or where

the "nominal headquarters isn't really the directing intelligence of the corporation." *Wisconsin Knife Works*, 781 F.2d at 1282-1283. As noted, defendant has established that the place of corporate decisions, and the location of most of its officers and shareholders, as well as the location of its principle office and corporate headquarters, is in the State of Ohio. As such, defendant has met its burden of showing that defendant's "nerve center" is in Ohio. Accordingly, plaintiff's motion to remand is denied.[1]

### III.   Summary.

For the above reasons, plaintiff's motion to remand (Doc. 9) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:** January 23, 2006.

*s/ James L. Foreman*
**DISTRICT JUDGE**

---

[1] Plaintiff also notes that in two prior cases (Case No. 99-L-75, Saline County, Illinois, and Case 99-L-0648 A, St. Clair County, Illinois), defendant responded to the complaints by filing pleadings which stated that Illinois was its principal place of business. Mr. McKown testified at his deposition, however, that his understanding was that these assertions were "inadvertent." (Doc. 19, Exh. A, p.35). In any event, with regard to this case, defendant has set forth facts to establish that defendant's "nerve center" is located in Ohio. Plaintiff does not dispute these assertions. Based upon defendant's assertions, which remain undisputed, the Court concludes that defendant's nerve center is in Ohio.